MISSOURI PAC. RY. CO. *v.* TEXAS & P. RY. CO., (PRICE, Intervenor.)

*(Circuit Court, E. D. Louisiana.* January —, 1888.)

1. REFERENCE—REPORT—PRESUMPTION IN FAVOR OF.
    In a claim for damages for personal injuries, the evidence was so conflicting that, in order to reach a finding of the real facts, some testimony must be rejected as untruthful. *Held* that, unless plain error was established, the finding of the master should be as conclusive as the verdict of a jury.

2. DAMAGES—PERSONAL INJURIES—AMOUNT.
    In a claim filed by an employe of defendant for damages for personal injuries, sustained while in the line of his duty, the master allowed claimant the amount of his expenses and wages while laid up, and general damages amounting to $350. *Held,* that as the master found that claimant was injured and had incurred expenses, the amount allowed was not excessive.

3. SAME—PERSONAL INJURIES—INADEQUATE DAMAGES.
    In a claim for damages filed by an employe against defendant for injuries sustained while in the line of his duty, the master allowed claimant his wages and expenses incurred, and general damages, amounting in all to $350. *Held* that, as the case showed clearly that the intervenor attempted to set up and prove fictitious injuries for the purpose of enhancing the claim for damages, there was no ground for him to claim that the court should go behind the master's report and increase the allowance.

On Exceptions to Master's Report.

Sam Price, intervenor, filed a claim against the receivers of the Texas & Pacific Railway Company for damages for personal injuries sustained while in their employ. The matter was referred to J. R. G. Pitkin, as master, who reported to the following effect:

"That it appears that about 7:30 P. M. of the fifteenth day of November, 1886, and near Hawkings, Texas, the complainant, a section hand in the employment of said receivers, and while one of a crew of six, and in discharge of duty incident to that service, upon a moving push car in rapid progress, down grade, and under a foreman's orders, pursuant whereto he sought, with a fellow-hand, to arrest that vehicle at a certain locality, pressed against its left front wheel a stick held half a foot above the rail, and through a hole cut for said purpose in the car floor, a plank whereof, not nailed as is customary, and against which the stick bore, was suddenly thrown up, causing said brakestick to slip, both servants to be thrown in front of the moving car, and complainant to be run over in the encounter, and to sustain injuries that disabled him for a month from railway work, and for a week from leaving his domicile, within which he walked about, unassisted, on the day after said mishap. That said injuries have subjected him to considerable pain, mental and physical; to charges for medical care and drugs in the sum of $37.50; to a loss of wages, during his prostration, in the sum of $35; and to an alleged shorten-

ing by an inch and a half of the left leg, and to pain at its hip-joint, in permanent impairment of his former capacity ($35 per month) for labor, and that he is entitled to compensation in damages in the sum of $10,000. That the physician who attended complainant on the day of the injuries ascribes said shortening to a fracture of the neck of the left *femur*, but cannot swear that the fracture had just occurred; knows of no instance in the books, and of no other in his experience, of a person walking on the ensuing day, as did claimant, who made neither then, nor two weeks nor two months later, complaint in respect of his hip, such an injury whereto produces immediate and intense pain, that continues during many weeks, and forbids such prompt exercise as walking, which he declares to be almost universally considered impossible without being accompanied with excruciating pain. That two other physicians concur in declaring such a fracture to be of a character so serious as to forbid leaving one's bed for from four to nine weeks, and so acutely painful from its very inception as to render walking across one's room impossible, move one to instant complaint, and arrest the attention of a doctor in attendance. That said attending physician saw complainant walking two weeks thereafter, and was still without suspicion of the alleged fracture; and, until about three months later, when an examination, induced by complainant's limp, disclosed a fracture to have occurred at some time, though whether six months or six years before, the physician is unable to state.

"The master concludes, at this stage, that the testimony of three medical experts forbids a presumption that said fracture of the *femur*, which the complainant admits did not confine him to the house for more than a week later, and to his bed for 24 hours later, was an injury sustained, as deposed, on said day, before which his manner of walking was not different from its present wise; and that the only shown injuries then received to his person were three broken left ribs, which are wholly restored, are in that condition as good as ever, and impaired his earning capacity for a month, upon which lapse he re-entered the same service, at the same stipend, and relinquished it nine days later to receive care at the railway hospital for a new ailment,—pneumonia. That it further appears that complainant and his gang had never previously occupied the push car, of whose unnailed planks he and they on said night had no knowledge, the darkness prevented view, and the usage of properly nailed planks on such vehicles forbade distrust; but he had several times assisted in its removal from the track during the month before his hurt, for which period two of the five car planks were known to his foreman to be loose.

"That the record discloses at the next stage of inquiry, and on the testimony of witnesses, all colored, an admixture of falsehood which challenges attention. Of the four—Price, Beavor, Orr, Prince—of the hands present at the hearing, and in accord as to the number and names of the crew of the six upon the car, three distinctly deny, and one does not remember, that Hill was thereon, as he deposes. That Hill concurs with section-hand Conway and section foreman Locket, neither at the scene of injury, and Prince, between each of the latter two of whom and complainant no friendly feelings appear to subsist, in the statement that during a week after said injury the complainant attended a festival, seemed as well as usual, walked about, and danced nimbly; Prince adding that on the day after the injury he saw complainant, gun in hand, hunting in the Sabine bottoms.

"That, since some reasonable conclusion must be reached in the premises despite the obliquity shown in this record, and since the testimony preponderates against Hill as to his presence on the car, and thus impairs his credibility as to claimant's presence at the festival, in respect of which the testimony of Locket and Prince likewise invites question by reason both of their apparent disposition against the complainant and of the distinct testimony of a physician, who appears to be a candid and impartial witness, the master

concludes that a man under medical treatment, at his own house, of three fractured ribs, could not, on the same day, have been out hunting, nor in a condition, during the same week, to expend his vitality and jar his frame by active dancing; and the master finds greater reason, as to said recited particulars, for confidence in the denial of complainant than in the testimony of the negroes Hill, Locket, Conway, and Prince, the last-named of whom was upon the car and states, without support by the other witnesses thereon, that complainant received his hurt after having needlessly jumped off in front of the car to arrest its progress, instead of having properly awaited its halt.   That while the record does not justify faith in his declaration that the injury to his hip-joint dates from said night, the circumstances otherwise shown warrant a presumption that he did not have knowledge of the condition of the car, and the hazard presented by reason whereof, while within the line of his duty and in its discharge, within the exercise of ordinary care, he received, as to three ribs, injuries that did not disable him from earning the same wages in the same service a month later; and that he is entitled to damages, in view of the value of his lost time during said period, $35; of his expenditures or indebtedness for medical care and medicines, $37.50; and of the blended mental and physical pain sustained, without shown impairment of health, by reason of said temporary injuries, the proximate cause whereof was the negligence of the foreman, to whom only appears to have been known the recited defect of said car, the safe condition of which, under the master's obligation of ordinary prudence to provide reasonably fit appliances, the complainant, subject to the direction of said superior servant, and without opportunity to exercise preventive care against such laches in the premises, (*Cooper* v. *Mullins*, 30 Ga. 146; *Donaldson* v. *Railroad Co.*, 18 Iowa, 280,) had a right, without investigation, to assume, (*Porter* v. *Railroad Co.*, 71 Mo. 66; *Railroad Co.* v. *Gildersleeve*, 33 Mich. 133; *Davis* v. *Railroad Co.*, 20 Mich. 126; *Muldowney* v. *Railroad*, 36 Iowa, 463; *King* v. *Railroad Co.*, 11 Biss. 362.)   That the risk to which complainant was exposed by said immediate representative of the receivers, through both his order, without admonition to complainant, and his month of failure to give due notice for reasonably good repair of a vehicle peculiarly within his charge and control, (*Reber* v. *Tower*, 11 Mo. App. 199,) was not an assumed ordinary (*Coleman* v. *Smith*, 55 Tex. 255) or patent risk, but a superadded risk, which, as to the particular incident, attaches liability for negligence (4 Tex. Law Rev. 36, 54; *Railway Co.* v. *Kirk*, 62 Tex. 227; *Railway Co.* v. *Watts*, 64 Tex. 568) to the master, who offered the structure for use, (Whart. Neg. § 211,) no matter who may be the agent through whom, as a vice-principal, he acts in discharge of the specific duty of diligent care, whether he be an engineer, (*Mann* v. *Print Works*, 11 R. I. 152,) foreman, (*Grizzle* v. *Frost*, 3 Fost. & F. 622,) conductor, (*Railway Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184,) or section boss, (*Railroad Co.* v. *Bowler*, 9 Heisk. 866, 20 Amer. Ry. Rep. 65; *Warner* v. *Callender*, 20 Ohio St. 196; *Smith* v. *Railroad Co.*, 15 Neb. 583, 19 N. W. Rep. 638; *Gilmore* v. *Railway Co.*, 15 Amer. & Eng. R. Cas. 304; *Railway Co.* v. *Lavalley*, 5 Amer. & Eng. R. Cas. 549; *Bush* v. *Railroad Co.*, 18 Amer. & Eng. R. Cas. 559.)

" ' The weight of authority seems to be in favor of the proposition that the general rule, that a master is not liable to a servant for the negligence of a co-servant, does not apply where the injured servant is inferior in rank to the one by whose negligence he is injured, and is under the direction and control of such other, and is bound to obey his orders.' *Railroad Co.* v. *Fort*, 17 Wall. 553; *Railroad Co.* v. *Whitmore*, 58 Tex. 276; *Gravelle* v. *Railway Co.*, 3 McCrary, 352, 10 Fed. Rep. 711; *Gilmore* v. *Railway Co.*, 18 Fed. Rep. 866; *Ryan* v. *Bagaley*, 45 Amer. Rep. 35; *Cowles* v. *Railroad Co.*, 37 Amer. Rep. 620; *Wilson* v. *Linen Co.*, 50 Conn. 433; *Hoben* v. *Railroad Co.*, 20 Iowa, 562; *Ryan* v. *Bagaley*, 50 Mich. 179, 15 N. W. Rep. 72; *Eagan* v. *Tucker*, 18

Hun, 347; *Schultz* v. *Railway Co.*, 48 Wis. 375, 4 N. W. Rep. 399, and numerous other authorities in twenty states. The law imposes upon the master the duty not only of providing safe and suitable means, but of keeping them in a safe and proper condition, and from growing dangerous or unfit, (Beach, Contrib. Neg. § 124;) and the knowledge and negligence in this relation of one who is charged with a principal's specific duty to servants, (Id. § 111,) or a foreman's assurance of safety or orders to perform a dangerous act (*Railway Co.* v. *Harney*, 28 Ind. 28) not within a workman's contract of service, (Whart. Neg. § 235,) are imputable to a principal constructively present, whose reasonable diligence should have discovered the defect, (*Muldowney* v. *Railway Co.*, 36 Iowa, 462; *Jones* v. *Railroad Co.*, 22 Hun, 284; *Railroad Co.* v. *Orr*, 84 Ind. 50; *Railroad Co.* v. *Lyde*, 57 Tex. 505; *Wedgwood* v. *Railway Co.*, 44 Wis. 44; *Brabbits* v. *Railway Co.*, 38 Wis. 290; *Ford* v. *Railroad Co.*, 110 Mass. 240; *Corcoran* v. *Holbrook*, 59 N. Y. 517; *Malone* v. *Hathaway*, 64 N. Y. 5.) A railway company is liable when its officers or agents, with a controlling or superior duty in that regard, are in discharging it guilty of negligence, from which injury to an innocent party results. *Hough* v. *Railway Co.*, 100 U. S. 213. If the master, or another employe standing towards the servant injured in the relation of superior, orders the latter into a situation of greater danger than in the ordinary course of duty he would have incurred, and he obeys and is injured, the master is liable, unless the danger is so apparent that to obey would be an act of recklessness. *Miller* v. *Railway Co.*, 17 Fed. Rep. 67; *Railroad Co.* v. *Caven's Adm'r*, 9 Bush. 559. In *Railroad Co.* v. *Doyle*, 49 Tex. 190, where an employe was injured by a defect in a hand car, held, if the danger was greater than could be discovered by the use of ordinary care, the employer may be in default when the injury was produced in a manner not anticipated. A servant, whose negligence has caused the injury, may, in the discharge of one class of duties, act as a vice-principal, and, in the discharge of another class, he may be only a fellow-servant. Patt. Ry. Acc. Law, § 307. Where the negligence of a railway in supplying defective appliances is the proximate cause of injury to a servant, it is no defense to the railway that the negligence of a fellow-servant concurred in causing the injury. *Railway Co.* v. *Cummings*, 106 U. S. 700, 1 Sup. Ct. Rep. 493; *Stringham* v. *Stewart*, 100 N. Y. 516, 3 N. E. Rep. 575; *Cone* v. *Railroad Co.*, 2 Amer. & Eng. R. Cas. 57; *Railroad Co.* v. *Holt*, 11 Amer. & Eng. R. Cas. 206; *Elmer* v. *Locke*, 15 Amer. & Eng. R. Cas. 300; *Ransier* v. *Railroad Co.*, 21 Amer. & Eng. R. Cas. 601.

"Wherefore, it is recommended that complainant be granted for said temporary injuries an allowance of $350, to be paid when he shall have executed a receipt to the receivers in full of all damages thereby sustained.

       "Respectfully submitted,             J. R. G. PITKIN, Master."

*J. E. Eckford*, for claimant.

*W. W. Howe* and *W. W Leake*, for receivers.

PARDEE, J., (*orally.*) The law of the case, as reported by the master, is not questioned. The evidence is so conflicting that in order to reach a finding of the real facts some testimony must be rejected as untruthful. In such a case, unless plain error is established, the finding of the master should be as conclusive as the verdict of a jury, though, in important cases, I have sometimes sent the case to a jury. As the master finds that the intervenor was injured, and incurred expenses, it cannot be said that the amount allowed is excessive; and as the case shows clearly that the intervenor attempted to set up and prove fictitious injuries for the purpose of enhancing the claim for damages, there is no ground for him to

claim that the court should go behind the master's report, and increase the allowance.

The exceptions on both sides will be overruled, and the report confirmed.